MoIlvaine, J.
The original action, as well as the subsequent proceedings in error, have been prosecuted under the following preamble and resolution, adopted by the general assembly of the state on the 2d of May, 1871:
“ Whereas, A. Bassett, on the 24th day of April, 1845, was the holder and owner of the bonds of the State of Ohio, known as ‘ Ohio Turnpike Stock,’ for the payment *545 of $1,000, issued in pursuance of thé act of the general assembly of this state, passed March 13, 1843, with interest thereon, payable semi-annually, which skid bonds were deposited with the treasurer of the state by the said A. Bassett, on the 24th day of April 1845, for which said Bassett received from the treasurer of state "a certificate of deposit of said bonds, dated April 24, 1845, and which certificate said A. Bassett still holds, and who claims that the said bonds so deposited by him have never been paid to him by the state, or to any other person authorized to receive payment of the same, and that the State of Ohio still owes him the amount of $1,000 on the said bonds, with the interest thereon from the 1st day of November, a. d. 1845; therefore, be it
“Resolved by the General Assembly of the State of Ohio, That said A. Bassett is hereby authorized, within ninety days from the passage of this resolution, to bring an action in the Court of Common Pleas of Franklin county, Ohio, against the State of Ohio, for the recovery of the amount of said state bonds so deposited as aforesaid, and the interest thereon, on account of the refusal of the state to pay the same on the presentation of said certificate of deposit; and said action shall be proceeded in to final judgment, according to the code of civil procedure, as in cases of private individuals; the parties to said action shall have the same right to prosecute petition or petitions in error as is or may be provided for actions between other parties; the state shall not be required to give bond in the prosecution of any petition in error; service of summons in the commencement of suit may be made on the attorney-general for the state, and the service of all orders, notices, etc., which may be necessary in the prosecution of said action, shall be complete, if made upon said attorney-general; said attorney-general is hereby authorized and required to defend said suit when brought, and all acts in the premises done by him shall be valid for and against the state : Provided, that nothing herein shall be construed to recognize *546 the authority of the treasurer of state, in the foregoing transaction, to receive said deposit or issue said certificate, as the agent of the state.”
The preamble to the above resolution distinctly recognizes the fact that the plaintiff* in error, on the 24th of April, 1845, was the owner and holder of the bonds claimed by him, and also that the bonds were on that day deposited by him with the treasurer of state. As to the claim of Bassett “ that the bonds so deposited by him have never been paid to him by the state,” it is sufficient to say that there was no testimony offered on the trial below, tending •to show that payment had been made to him personally, nor was there any testimony tending to show that payment had been made to any person authorized by him to receive •such payment, unless the treasurer of state was so authorized.
It is shown that the treasurer of state has been credited with the amount of the bonds, as for money paid in their redemption ; but to whom it was paid, or when it was paid, •does not appear in the testimony.
The irresistible inference from the facts proved in the •court below, as also from the pleadings in the case, is that the treasurer of state, Whitehill, or one of his successors in office, at some time between the date of the deposit of the bonds and the close of the year 1854, took from the treasury of the state the amount of these bonds, and converted the same to his own use, crediting himself and charging the state upon the books of his office with the money. The main question, therefore, for the decision of the court below, and for decision here, was, and is, Does the State of Ohio, under the circumstances stated, still owe to Bassett the amount of said bonds, “ with, interest thereon from the 1st day of November, a. d. 1845 ?”
We think this question should be resolved in the affirmative, though it be conceded that the treasurer of state was not authorized to receive said bonds as a deposit, or to issue •said certificate as the agent of the state.
Let it be conceded that Whitehill had no authority, in *547 •Ms official capacity, to receive the bonds on deposit, and that, therefore, he and his successors in office became, for the time being, bailees of the bonds, in their individual capacities, under the employment of the plaintiff in error. As matter of law, the mere possession of the deposit under the contract of bailment conferred no right upon the bailee to collect the bonds, or to receive payment thereof. The legal duty of the depositary was to exercise care in the safekeeping of the bonds, until the depositor should direct their disposition. As matter of fact, the plaintiff in error did not authorize the bailee to receive payment of the bonds. The only testimony upon this point was given by the plaintiff himself, to wit: That, in April, 1845, in an interview which he had with Joseph 'Whitehill, the treasurer of state, in which he was informed that there was no money in the treasury subject to the payment of such bonds, and that no payment could be made until after the next annual appropriation, from collections from surplus •revenue, for that purpose, and that annual pro rqta payments would be made on claims of this class presented at the treasury, from the appropriations made for that purpose, said Whitehill advised him, with a view to facilitate the distribution among the creditors equally, that these bonds be deposited with the treasury of state, and that he (the treasurer) would advise him (Bassett) of such pro rata appropriation, without an'y special application at the time. Agreeably to this advice, and learning that this was the custom there of many other holders of these bonds, he made a deposit with the treasurer of his said ten bonds; . . . that he had never received any part of the principal or interest of said ten bonds, except the interest to November 1,1845, nor did he ever authorize any person to receive the same for him, or on his account.
If this uncontradicted testimony be true, it is quite clear that no authority was given to Whitehill or to any person who succeeded him in the possession of the bonds, to either demand or accept payment thereof from the treasury of the state. The only use of the bonds, aside from the mere *548 custody, given to the treasurer, was to aid him in ascertaining the whole amount of bonds among which a prorata payment might be made.
On the other hand, if this testimony was rightly- discredited by the court on the trial of the original action (for which we see no good reason), then the case stood without any evidence tending to overcome the fact as recognized in the preamble to the resolution under which the action was prosecuted, to wit: That the bonds were delivered to the' then treasurer of state as a pure deposit. If such was the nature of the bailment, no right was conferred upon the bailee, or his successor in office, to demand or receive payment of bonds as agent of the plaintiff or otherwise. 'Whether, therefore, we look into the testimony, or to the resolution, or both, it is quite clear, that neither Whitehill nor any succeeding treasurer of state had any authority from Bassett whereby he could, as the agent of Bassett, accept payment of the bonds from the state treasury.
It only remains, therefore, to inquire, whether Bassett, by reason of the deposit made with the treasurer of state, is estopped from demanding payment from the state.
It is true, that by depositing the bonds with the treasurer, it was placed in his power to cancel the bonds and to claim credit, on his account with the state, as for money expended in their redemption. And it is also true that money to the amount of the bonds has been abstracted from the treasury, and that Whitehill, or one of his successors in office, has been credited therewith. But it is not true that, in abstracting the money, or in canceling the bonds, or in taking credit for the amount of the bonds, the treasurer of state was acting as the agent of Bassett. Nor is it true that the treasurer of state, in performing these acts, or either of them, was induced, by anything that Bassett had done, to believe that such acts were rightly performed in the discharge of his official duties. Each of these wrongful acts was committed, not by the agent of Bassett, but by the officer of the state, and with full knowledge of all the facts, And, whether he intended to defraud Bassett or the *549 ■state, that party whose agent he was, and whose confidence he abused in committing the wrong, should bear the loss. 'This is not a case in which an officer of the state was deceived by the apparent authority of a person who claimed to be Bassett’s agent. The treasurer of state knew that Bassett was not represented in the transactions by an authorized agent. It was the treasurer of state, and not Bas.sett’s agent, who committed these breaches of trust. As between Bassett and the state, the latter, upon familiar principles of law, must stand charged with the knowledge of its officer in the premises. And, for this reason, the state can not set up, by way of estoppel against Bassett, that in subsequently accounting with its officer, it was induced to allow a credit for the amount of the bonds. It was not in the matter of accounting with its officer that the state was wronged, but by the primary act of embezzlement. Bassett was not a party to that act. And as the state was chargeable with full knowledge of all the facts, through the knowledge of its officer, at the time the money was wrongfully withdrawn from its treasury by its officer, so was it chargeable with like knowledge at the date of the subsequent accounting with its unfaithful officer.

Judgments below reversed, etc.

"Welch, C. J., "White, ‘Res, and Gilmore, JJ., concurred.